UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TOM SPARKS,

                    Plaintiff,

          v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

                    Defendant.

CASE NO. C18-5038 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT,
DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR
SANCTIONS

This matter comes before the Court on Defendant American Family Mutual

Insurance Company's ("American Family") motion for summary judgment (Dkt. 7) and

Plaintiff Tom Sparks's ("Sparks") cross-motion for summary judgment (Dkt. 9). Also

before the Court is Sparks's motion for Rule 11 sanctions. Dkt. 17. The Court has

considered the pleadings filed in support of and in opposition to the motions and the

remainder of the file and for the reasons stated below (1) denies American Family's

motion for summary judgment, (2) denies Sparks's motion for sanctions, and (3) grants in

part and denies in part Sparks's motion for summary judgment.

# I.   BACKGROUND

On November 27, 2015, a fire significantly damaged Sparks's home in Bonney Lake, Washington. Dkt. 1-2 at 2. The fire also destroyed his personal property in the home. *Id.*

Sparks made a claim for his covered property under the "Gold Star Homeowners Policy" he purchased through American Family, which provided dwelling, personal property, and loss of use coverage. Dkt. 8-1 at 5–6. The policy allowed Sparks to recover the "Actual Cash Value" of his damaged or destroyed personal property under the following settlement provision:

> 1.   REPLACEMENT COST. Except for property listed in 2. or 3. below the following applies:
>    a.   until **you** make the actual repair or replacement, we will pay only the **actual cash value** of the damaged property;
>    b.   After **you** complete repair or replacement, we will pay the difference between the **actual cash value** of the damaged property and the cost to repair or replace such property;
>    c.   If property is not repaired or replaced within two years after the date of loss, we will pay only the **actual cash value** of the damaged property.

Dkt. 8-1 at 30. The policy defines "Actual Cash Value" as follows: "**Actual Cash Value** means the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence." Dkt. 8-1 at 3.

The policy also requires that, after a loss, claimants submit to American Family "a detailed inventory of the damaged property, showing the quantities, when and where acquired, original cost, current value and the amount of loss," attaching "to the inventory bills, receipts and related documents that substantiate all amounts." Dkt. 8-1 at 13.

A public adjuster compiled an inventory of personal property on behalf of Sparks and transmitted the inventory to American Family. Dkt. 10-1 at 34–75. The inventory included the room in which the personal property was located; a description of the property including brand, type, and model if known; the source or URL of the website from which the items were available or purchased; prices; taxes and shipping; and miscellaneous notes that sometimes detailed information such as whether an item was "new," "hand made," "no longer made." *Id.* The inventory estimated the replacement cost total of Sparks's destroyed property at $108,783.23. *Id.* at 34.

On July 6, 2016, American Family responded to the public adjuster and confirmed that it had received the inventory. Dkt. 10-1 at 77. American Family also noted that the inventory did not reference the age of the listed property. *Id.* therefore, American Family requested that the adjuster "[p]lease add an additional column to [the] worksheet and provide the age of each item." *Id.*

On January 16, 2017, American Family returned its own estimate of Plaintiff's loss. Dkt. 10-2. American Family estimated the replacement cost value as $89,452.90. *Id.* at 2. American Family also estimated that Sparks's personal property had sustained $52,111.75 in depreciation, resulting in an estimated actual cash value of $36,007.70. *Id.* American Family's inventory included a description of each item, unit prices, estimated replacement cost, estimated depreciation, and estimated actual cash value. *Id.* at 7–137. The depreciation estimate also included a notation of the age of the covered item and a generic estimate of the items' expected lifespan. *Id.* Accordingly, a sample of American Family's estimate appears as follows:

| Description | Qty | Unit Price | Taxes | Replacement Cost Total | Less Depreciation | Actual Cash Value |
|---|---|---|---|---|---|---|
| | 1.00 EA | $39.99 | $3.52 | $43.51 | -$21.76 (5/10yr) | $21.75 |
| Pricing Provide by PA | | | | | | |
| 1,079. Werner 24' Aluminum Extension Ladder - 225lb. | | | | | | |
| | 1.00 EA | $159.00 | $13.99 | $172.99 | -$8.65 (1/20yr) | $164.34 |
| Pricing Provide by PA | | | | | | |
| 1,080. Assorted Potting Containers - Various Sizes | | | | | | |
| | 1.00 EA | $75.00 | $6.60 | $81.60 | -$32.64 (4/10yr) | $48.96 |
| Pricing Provide by PA | | | | | | |

**Back Porch continued...**

Dkt. 10-2 at 137.

Notably, a review of the estimate shows that American Family's depreciation estimate was obtained simply by dividing the item's price by the number of years for its estimated lifespan, multiplying that number by the item's estimated age, and then subtracting that number from the item's price. The formula can be expressed as Replacement Cost – Age x (Replacement Cost / Estimated Lifespan) = Actual Cash Value. For instance, in regards to Sparks's Werner 24' Aluminum Extension Ladder, the total replacement cost estimate of $172.99, divided by the estimated lifespan of 20 years, yields a value of $8.6495. Because the ladder was only one year old, the price of $172.99 less the total of $8.6495 multiplied by one year, equals American Family's estimated actual cash value of $164.3405. Similarly, the estimated total replacement cost of Sparks's assorted potting containers ($81.60) divided by their expected lifespan (10 years), multiplied by the containers' age (4 years), and then subtracted from the estimated replacement cost value ($81.60), yields American Family's estimated actual cash value ($48.96).

On January 17, 2017, the public adjuster responded via email to American Family's estimate. Dkt. 10-3 at 3–4. The public adjuster noted that there was a "significant depreciation taken on a number of items, including 100% depreciation taken on several items." *Id.* Accordingly, the public adjuster requested that American Family explain the formula it used to calculate depreciation. *Id.* at 4.

On January 20, 2017, American Family responded via email, stating that its depreciation calculations were "based on [the items'] age over their expected lifespan." Dkt. 10-3 at 2–3. Additionally, American Family's email stated that in response to the public adjuster's email they had "changed the depreciation from 100% to 90% to give some value to those" items that American Family had deemed worthless based on their age. *Id.* at 3. On February 8, 2017, the adjuster replied by email to state, "I don't see anywhere in your policy that states age is a consideration in determining depreciation or Actual Cash Value of the personal property." *Id.* at 2. The adjuster also noted that, in a case before the Western District of Washington, the court had recently found that American Family's use of age to calculate depreciation was improper. *Id.* Accordingly, the adjuster requested that American Family confirm whether its depreciation calculation was "solely age dependent." *Id.*

On April 26, 2017, the public adjuster again responded to American Family's communications. Dkt. 10-3 at 7–8. The public adjuster stated that American Family had calculated "an unreasonably high depreciation amount" and stated that American Family's use of age as the "sole consideration in American Family's application of depreciation . . . runs contrary to the clear and unambiguous language in the policy that

depreciation can be determined *by physical deterioration and obsolescence*." *Id.* at 7 (emphasis added).

By December 21, 2017, American Family had not changed its position regarding its depreciation calculations, so Sparks commenced this action by filing his complaint in Pierce County Superior Court. Dkt. 1-2. Sparks alleges that American Family's depreciation calculation constitutes (1) a breach of the applicable policy's terms, (2) bad faith, and (3) a violation of Washington State's Consumer Protection Act ("CPA"). *Id.* On January 17, 2018, American Family removed the case to federal court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441. Dkt. 1.

On February 7, 2018, American Family filed its present motion for summary judgment. Dkt. 7. On February 26, 2018, Sparks filed his response and the present cross-motion for summary judgment. Dkt. 9.

On March 2, 2018, American Family replied on its motion for summary judgment and filed an answer to the complaint. Dkts. 11, 12. On March 19, 2018, American Family filed its response to Sparks's cross-motion for summary judgment. Dkt. 13. On March 23, 2018, Sparks replied on his cross-motion. Dkt. 16.

On March 30, 2018, Sparks filed a Rule 11 motion seeking that the Court strike American Family's motion for summary judgment and impose monetary sanctions. Dkt. 17. On April 16, 2018, American Family responded. Dkt. 21. On April 23, Sparks replied. Dkt. 23.

## II.  DISCUSSION

American Family and Sparks have both filed motions for summary judgment.

American Family argues that the applicable legal "authorities all support the basic

principle that American Family, as a matter of law, may consider age as a factor in

calculating depreciation under the policies at issue." Dkt. 7 at 16. Accordingly, American

Family moves that the Court "grant summary judgment in American Family's favor, and

this case should be dismissed in its entirety and with prejudice." *Id.* Sparks argues that

"[w]hen American Family used only age in calculating the Actual Cash Value of Mr.

Sparks's personal property . . . it breached the terms of the Policy, committed bad faith,

and violated the Consumer Protection Act." Dkt. 9 at 21. Therefore, Sparks requests that

the Court "grant Mr. Sparks [sic] Cross-Motion for Partial Summary Judgment on breach

of contract, bad faith, and CPA violations, and deny American Family's Motion for

Summary Judgment." *Id.*

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

A.    **Policy Interpretation and Age as a Factor in Calculating Depreciation**

The present motions focus on the construction of the policy's provision that defines Actual Cash Value as "the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and

obsolescence." Dkt. 8-1 at 3. Specifically, the parties dispute the extent to which age can be used as a factor in assessing the depreciation of property covered in a claim.

The interpretation of insurance policies and lease agreements is generally a question of law to be decided by the court. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171 (2005); *Duvall Highlands LLC v. Elwell*, 104 Wn. App. 763, 771 n.18 (2001). The court construes an insurance policy as a whole, giving the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Amer. Nat. Fire Ins. Co. v. B & L Trucking and Constr. Co., Inc.*, 134 Wn.2d 413, 427 (1998) (internal quotations omitted). However, where a material provision of a policy or contract is ambiguous, "[d]etermining a contractual term's meaning involves a question of fact and examination of objective manifestations of the parties' intent." *Martinez v. Miller Indus., Inc.*, 94 Wn. App. 935, 943 (1999). A clause is ambiguous when, on its face, it is fairly susceptible to two reasonable interpretations. *Amer. Nat. Fire Ins. Co.*, 134 Wn.2d at 429.

The issues raised in the parties' motions are not new to the Court. In *Barron*, a case cited by both the parties, the Court has already determined that that the precise language at issue in American Family's policy is clear and unambiguous. *Barron v. Am. Family Mut. Ins. Co.*, C16-5576 BHS, 2017 WL 1511033, at *2 (W.D. Wash. Apr. 27, 2017). The Court determined that "the common definition of obsolescence confers the idea of property losing value over time and depreciation by obsolescence may include age as a factor." *Id.* at *2. Therefore, because the policy's definition of Actual Cash Value subtracts "depreciation for physical deterioration *and obsolescence*," Dkt. 8-1 at 3

(emphasis added), "the contract language does not preclude American Family from considering age when calculating depreciation," *Barron*, 2017 WL 1511033 at *2. However, the determination that the applicable policy provision does not preclude the use of age as a factor did not end the Court's analysis. The Court further determined that the plain language of the provision requires that the use of age in calculating depreciation must nonetheless be grounded in actual "physical deterioration or obsolescence," and "if the passage of time (age) or other factors did not cause physical deterioration or obsolescence in an item, there is no depreciation." *Id.* (quotation marks omitted). Accordingly, the Actual Cash Value provision precludes American Family from categorically reducing Actual Cash Value based exclusively on an item's age without any regard for actual physical deterioration or obsolescence.

American Family argues that Sparks is mistaken in his interpretation that "the policy allows depreciation ***only*** based on physical deterioration or obsolescence." Dkt. 13 at 9. However, this is clearly the only reasonable interpretation of the Actual Cash Value provision. That this is the only reasonable interpretation of the Actual Cash Value provision was the conclusion of the decisions in both *Barron* and *Lains v. Am. Family Mut. Ins. Co.*, C14-1982-JCC, 2016 WL 4533075, at *2 (W.D. Wash. Feb. 9, 2016). While the decision in *Barron* is considerably more favorable to American Family in its determination that age is relevant to the question of obsolescence, both *Barron* and *Lains* make clear that depreciation calculations under the Actual Cash Value provision must be based on actual physical deterioration or obsolescence, and age alone is not an appropriate factor for American Family to reduce an item's value.

In reaching its decision in *Barron*, the Court rejected American Family's argument that its reliance on age in calculating depreciation under the Actual Cash Value provision entitles them to summary judgment. The Court reaches the same result here. In *Barron*, the American Family's motion was granted in part because a question before the Court was whether age was a categorically inappropriate factor in calculating depreciation for obsolescence. In this case however, whether age must be excluded categorically as a factor in determining depreciation is clearly not at issue. Instead, the claims in this case are predicated on a theory that American Family improperly devalued the property covered by Sparks's policy by adjusting for depreciation based on age without any investigation into or basis to find that the age of the subject property had resulted in physical deterioration or obsolescence. Therefore, American Family's motion is **DENIED** in its entirety.

To the extent that Sparks moves for summary judgment on the issue of the Actual Cash Value provision's meaning, his motion is **GRANTED**. The plain language of the policy's Actual Cash Value provision precludes American Family from relying on age alone to devalue coverage without considering how or whether the passing of time actually resulted in any physical deterioration or obsolescence.

**B.     American Family's Use of Age in its Depreciation Calculation**

Having determined the meaning of the applicable Actual Cash Value provision, the remaining questions before the Court involve whether American Family is liable as a matter of law under Sparks's present legal claims for its method of adjusting the insurance claim. Specifically, the Court must determine whether American Family's

depreciation calculations in Sparks's insurance claim (1) constituted a breach of contract, (2) were made in bad faith, or (3) violated the CPA. But before the Court can address the merits of Sparks's claims in their applicable legal framework, the Court must first assess whether genuine disputes of material fact exist as to the method in which American Family calculated depreciation in Sparks's insurance claim.

The remaining issues in Sparks's motion are all predicated on a theory that American Family considered age alone when assessing depreciation of the covered property in his claim. Sparks has strong evidence to support his position. An email from American Family requesting that an adjuster supplement his "detailed personal property list" with the age of each item is the only instance in which American Family sought further information on Sparks's claim prior to rejecting the adjuster's estimate. Dkt. 10-1 at 77. Another email from American Family states plainly that its depreciation calculation "was based on [items'] age over their expected lifespan," and because some items were "over their expected lifespan" American Family valued those items as worthless. Dkt. 10-3 at 3. For instance, an antique Tiffany floor lamp originally worth $169.00 was deemed worthless because it was 50 years old, Dkt. 10-2 at 42; two down comforter sets originally worth a combined $129.95 were deemed worthless for being 10 years old, *id.* at 44; two work jackets worth $150.00 each were deemed worthless because they were 10 years old, *id.* at 56; a Persian rug originally worth $1,199.00 was deemed worthless because it was 10 years old, *id.* at 45. In one particularly egregious example, two professional level flutes originally worth over $1,600 each were deemed worthless because they were 25 years old. *Id.* at 49. After being questioned regarding its formula by

the adjuster, American Family arbitrarily "changed the depreciation from 100% to 90% to give some value to those" items that American Family had deemed worthless based on their age. Dkt. 10-3 at 3–4.

Additionally, communications from American Family expressly state that its formula for calculating Actual Cash Value under the policy was based on an item's:

> Age divided by normal Useful life, unless otherwise noted. Deviation from Age divided by normal Useful life is common due to inspection evaluation, condition of the item, obsolescence, product research, expert opinions, utility/functional value, market value and in some cases all or some of the above.

Dkt. 10-3 at 15–16. This definition indicates that American Family's practice is to initially calculate depreciation based exclusively on age and expected lifespan, and then subsequently deviate from that calculation if evidence suggests that deviation is necessary. It is clear from American Family's email communications referenced above that its depreciation calculations in this case stopped after the initial calculation based on age and that American Family's subsequent revision from 100% to 90% depreciation for many items had no basis in the items' actual physical condition or obsolescence. *See* Dkt. 15-1.

In response, American Family has argued that whether it relied exclusively on age in its calculations is a question of fact not ripe for summary judgment. Specifically, American Family argues that its contractor, National Vendor, uses a program called to Xactimate to calculate Actual Cash Value and that American Family "is not privy to the formula Xactimate uses to reach the ACV." Dkt. 13. *See also* Dkt. 15 at 2–3. American Family also argues that its adjuster, Mr. Elinger, "believes that the ACV figures per item

[from the Xactimate formula] took into consideration *minimally* when the item was purchased and its useful lifespan." Dkt. 13 at 3 (emphasis added). However, Mr. Elinger's actual declaration states: "it is my understanding that the ACV figures took into consideration when the item was purchased and its useful lifespan." Dkt. 15 at 3. This does not suggest that the items' age and estimated useful lifespan played a *minimal* role in American Family's Actual Cash Value calculation. In fact, Elinger's declaration does not indicate that the Xactimate Actual Cash Value calculation took into consideration anything other than the items' age and estimated useful lifespan. This is consistent with Elinger's statements that the depreciation calculation was based on the items' "age over their expected lifespan." Dkt. 10-3 at 2–3.

Despite arguing that there is a genuine dispute as to whether its depreciation calculation was based on anything other than the covered items' age, American Family has failed to submit evidence suggesting that there were any other factors that it took into consideration. In opposing summary judgment, "nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed." *Lujan*, 497 U.S. at 888–89. American Family is correct that this summary judgment proceeding has been initiated at an early stage, but it was American Family that first moved for summary judgment. Moreover, even if American Family believes it could obtain evidence regarding the Xactimate formula to show that it takes into consideration factors other than age to assess depreciation for physical deterioration or obsolescence, American Family has failed to request a Rule 56(d) continuance for the purpose of obtaining such discovery. On the record before the Court, there is no genuine dispute over the fact that when adjusting

Sparks's claim, American Family based its depreciation calculation exclusively on the covered property's age over expected lifetime.

Therefore, because there is no genuine dispute of material fact over the method in which American Family calculated depreciation when handling Sparks's insurance claim, the Court can address the merits of Sparks's claims for (1) breach of contract, (2) bad faith, and (3) violations of the CPA.

### 1. Breach of Contract

In Washington, "[a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Northwest Independent Forest Mfrs. v. Dept. of Labor and Indust.*, 78 Wn.App. 707, 712 (1995). The applicable insurance policy provides that Sparks was entitled to receive Actual Cash Value for his claim, which consists of "the amount it costs to repair or replace property with property of like kind and quality less depreciation for physical deterioration and obsolescence." Dkt. 8-1 at 3. This language imposed a duty on American Family to predicate any depreciation calculation for the covered property on actual "physical deterioration and obsolescence" and precluded such reductions based exclusively on the property's age. As explained above, American Family's depreciation calculations included an across-the-board devaluation based solely on the age of the covered property without inquiry into its actual physical condition or obsolescence. This constitutes a breach of American Family's duty under the Actual Cash Value provision of the applicable policy.

It must be noted that the policy does requires that insureds provide "a detailed inventory of the damaged property, showing the quantities, when and where acquired, original cost, current value and the amount of loss," attaching "to the inventory bills, receipts and related documents that substantiate all amounts." Dkt. 8-1 at 13. Accordingly, it would have been appropriate for American Family to require that Sparks provide information regarding the condition and usefulness of the covered property before accepting his claim. In fact, it was likely necessary. Applicable insurance regulations make clear that "*[i]nsurers* are responsible for the accuracy of evaluations to determine actual cash value." WAC 284-30-380(7) (emphasis added). Notwithstanding the policy provisions stating that a claim should show the property's "current value," American Family has failed to cite to any evidence that it has ever conducted an investigation into the physical deterioration or obsolescence of the covered property other than to request that Sparks's public adjuster provide the covered items' age. *See* Dkt. 10-1 at 77.

American Family has made several assertions that it encouraged Plaintiff to submit additional information. *See* Dkt. 13 at 3 (citing Dkt. 15 at 3) ("The list was sent to [the public adjuster] on January 17, 2017. [American Family] encouraged [the public adjuster] to provide additional information regarding specific items in order to reach a fair ACV."). However, a review of the actual communications between American Family and the public adjuster reveals no such encouragement. *See* Dkts. 10-1, 10-3. Regardless, even the declaration relied upon by American Family indicates that it applied its exclusively age-based depreciation formula to Spark's claim *before* conducting any

investigation or purportedly informing the adjuster that he could submit additional information regarding the covered property's condition. Furthermore, if American Family did in fact encourage the public adjuster to submit additional information regarding the covered property's condition, the emails exchanged immediately after American Family returned its actual cash value estimate reveal that such encouragement could only have occurred *after* (1) the public adjuster responded that the depreciation calculations were inappropriately severe, (2) American Family offered to arbitrarily increase the value of its 100% depreciation calculations to 90%, (3) American Family revealed that its depreciation formula was based exclusively on age over expected lifespan, and (4) the public adjuster objected that applying such a line-item formula based solely on age was unlawful. *See* Dkt. 10-3 at 2–5. Finally, American Family has failed to show any evidence suggesting that it ever informed Sparks what type of information or documentation it would accept or require in order to arrive at an accurate actual cash value determination. American Family was entitled, and perhaps obligated, to request further information regarding the "current value" of the covered property before approving or reducing Sparks's claim. However, the policy did not authorize American Family to automatically reject Sparks's claim and offer a reduced amount based on a formula for depreciation that considers only the items' age before conducting a reasonable investigation into the property's actual physical deterioration or obsolescence.

The Court further finds that the record indisputably shows Sparks has suffered some damages, but questions of fact remain as to the amount of the damages. For instance, it is clear that Sparks was damaged by American Family's breach of contract

when it devalued a Tiffany lamp purchased as an antique by 100% (and subsequently 90%) based solely on the lamp's age. *See* Dkt. 15-1 at 41. This is true as to numerous other items as well, but the Court need not provide a comprehensive list for the purposes of this order. *See* Dkt. 15-1. The difficulty is that questions remain as to the actual value of the covered property based on each item's actual physical condition and obsolescence. While no rational juror could find that the passing of time by itself has rendered a Tiffany lamp purchased as an antique significantly less valuable due to obsolescence, the same cannot be said of an eight-year-old laptop. *See* Dkt. 15-1 at 92. Therefore Sparks is entitled to summary judgment on the question of American Family's liability for breach of contract, although the extent of his damages remains a genuine factual dispute.

To the extent Sparks moves for summary judgment on the basis that American Family's Actual Cash Value determination constituted a breach of contract, Sparks's motion is **GRANTED**. However, Sparks's request that the Court find as a matter of law that he is entitled to $52,445.20 in damages is **DENIED**.

### 2. Bad Faith

Beyond the express terms of an insurance policy, insurers have a duty to act in good faith and deal fairly with insurers separate from their contractual coverage obligations. *See Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 393 (1992) (recognizing that insurer has an "enhanced obligation of fairness toward its insured" that "imposes a duty beyond that of the standard contractual duty of good faith"); *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381, 385–86 (1986) (holding that the fiduciary relationship underlying the insurer's duty of good faith imposes a responsibility to give equal

consideration to an insured's interests). Violation of this duty will give rise to a tort action for bad faith. "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded," and "[w]hether an insurer acted in bad faith is a question of fact." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003). For the question of bad faith to be resolved on summary judgment, "there must be no disputed facts pertaining to the reasonableness of the insurer's action in light of all the facts and circumstances of the case." *Id.* at 486. As explained above, the Actual Cash Value provision in American Family's policy unambiguously requires that devaluations for depreciation be based on physical deterioration or obsolescence. American Family's depreciation reduction was applied to Sparks's claim without any inquiry or investigation into the condition or usefulness of the covered property prior to its loss; instead, when requesting supplemental information to determine depreciation, American Family asked only for the property's age. Dkt. 10-1 at 77.

In addition to the unambiguous language of the policy itself, it should be noted that this is the third time in the past two years that this district has found that the Actual Cash Value provision precludes American Family from using age to apply an across-the-board devaluation for covered property. Despite the decision in *Lains* that American Family "improperly took age into consideration when determining depreciation," *Lains*, 2016 WL 4533075 at *2, American Family nonetheless persisted in the exact same practice when adjusting Sparks's claims. Similarly, this Court recently found in *Barron* that "[i]f the passage of time (age) or other factors did not cause physical deterioration or

obsolescence in an item, there is no depreciation" under the Actual Cash Value provision. *Barron*, 2017 WL 1511033 at *2. That decision was rendered in response to a motion from which American Family's present motion appears to have been copied and pasted. Nonetheless, American Family has persisted in asserting that its use of age constitutes an appropriate basis for its devaluation of Sparks's insurance claim without any investigation or inquiry into the covered items' actual physical condition or obsolescence.

 As explained above, American Family was not obligated to accept the public adjuster's appraisal and offer to pay the replacement cost of the items as initially submitted to them. Indeed, American Family would have been well within its rights to request additional information regarding the property's condition and obsolescence— including the property's age— in order to calculate depreciation. However, American Family instead automatically rejected Sparks's claim and offer a reduced amount based on solely on the items' age. Any reasonable insurer should recognize that such a practice will systematically result in inaccurate actual cash value calculations that are likely to be substantially less than the value of insureds' claims. *See* WAC 284-30-380(7); WAC 284-30-330(7). When insurance regulations place the onus on American Family to accurately determine Actual Cash Value, American Family cannot justifiably argue that it acted in good faith just because it was and remains willing to further adjust Sparks's claim if he provides unspecified evidence of "current value" that American Family has never requested.

The Court finds that no reasonable mind could differ in finding that American Family acted unreasonably when it applied a blanket depreciation reduction based solely on age to calculate the Actual Cash Value of Sparks's covered property. Accordingly, Sparks's motion for summary judgment is **GRANTED** and the Court finds as a matter of law that American Family's depreciation calculation was made in bad faith.

### 3.    Consumer Protection Act

Under the CPA, a person may bring a civil action against a business to recover damages stemming from any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. "To establish a claim under the CPA, five elements must be established: '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Svendsen v. Stock*, 143 Wn.2d 546, 553 (2001) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986)). "[B]ad faith constitutes a per se violation of the CPA." *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wn. App. 666, 678 (2012) (quoting *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 12 (2009)). *See also* RCW 48.01.030. Accordingly, having found that Sparks is entitled to summary judgment on the issue of whether American Family's depreciation calculation constituted bad faith, the Court must also grant summary judgment in favor of Sparks's CPA violation.

Additionally, it should be noted that "[a] violation of an insurance regulation constitutes an unfair trade practice, which may result in CPA liability if the remaining elements are established." *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wn. App. 666, 678 (2012). Sparks has cited several insurance regulations that he claims were violated by American Family's practice. First, Sparks argues that American Family's practice for calculating depreciation violated WAC 284-30-330(4), which prohibits insurers from "[r]efusing to pay claims without conducting a reasonable investigation." The Court agrees that American Family violated WAC 284-30-330(4) when it refused to pay Sparks's claim and instead reduced the covered property's value based solely on its age. Before denying Sparks's claim and depreciating the value of the covered property, American Family was required to perform a reasonable investigation into the covered property's physical deterioration or obsolescence. While an agent of American Family may have visited Sparks's destroyed home to perform an inspection, such a visit understandably failed to reveal any relevant information regarding the condition or usefulness of the property before it was destroyed in the fire. *See* Dkt. 15 at 2. Beyond this, the record shows that the only information American Family sought regarding depreciation before rejecting Sparks's claim and responding with a severely reduced estimate consisted of an email requesting the age of each item of covered property. Dkt. 10-1 at 77. As the Court has already stated, American Family's decision to calculate depreciation based solely on the age of the covered property was an unreasonable. The Record stablishes that American Family failed to conduct a reasonable investigation into

the condition and usefulness of the covered property before it rejected Sparks's claim and offered its own severely reduced estimate.

Second, Sparks argues that American Family violated WAC 284-30-330(1) by "[m]isrepresenting pertinent facts or insurance policy provisions." Specifically, Sparks argues that American Family misrepresented the Actual Cash Value provision of its policy in violation of WAC 284-30-350(1), which requires that insurers "fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented." The Court agrees. There is no dispute that American Family has repeatedly represented to Sparks that depreciation under the Actual Cash Value provision is a product of "age divided by normal useful life" and that the provision authorized American Family to reduce Sparks's claim based solely on the covered property's age. *See* Dkt. 10-3 at 3, 15. Notably, American Family has also represented that the Actual Cash Value provision allows "deviation" from American Family's "age divided by normal useful life" formula based on the condition or obsolescence of the item. *Id.* at 15. But such a statement plainly misrepresents the Actual Cash Value provision by telling insureds that calculations based on the condition and obsolescence of an item condition are the *exception* to the rule. In fact, under the policy's provision, Actual Cash Value calculations based on condition or obsolescence *are* the rule, and it is a misrepresentation of the policy's terms for American Family to suggest that it can rely exclusively on its age-based formula to reject a claim and reduce Actual Cash Value for depreciation without conducting any reasonable investigation into the covered property's actual physical condition or obsolescence. By representing to Sparks

that depreciation under the Actual Cash Value provision is based on an item's age divided by its expected lifespan, American Family failed to fully disclose the coverage of the policy which entitles Sparks to the full cost to repair or replace the covered property with like kind or quality unless the property has suffered from physical deterioration or has become obsolete.

Third, Sparks argues that American Family violated WAC 284-30-330(6) by failing to promptly investigate Sparks's claims. The Court declines to find that American Family violated WAC 284-30-330(6). As stated above, the record shows that American Family indeed failed to conduct a reasonable investigation of Sparks's claims, because its investigation did not reasonably seek information regarding the actual condition or obsolescence of the covered property. However, WAC 284-30-330(6) deals with an insurer's obligation to promptly effectuate a settlement in which liability has become reasonably clear. There is nothing in the record or Sparks's arguments to suggest that American Family has dragged its feet or has not moved promptly to resolve Sparks's claim.

Fourth, Sparks argues that American Family has violated WAC 284-30-330(7), which prohibits insurers from compelling a first party claimant to submit to litigation, arbitration, or appraisal "by offering substantially less than the amounts ultimately recovered in such actions or proceedings." While the Court recognizes that, based on its previous analysis, it is likely that American Family's practice for calculating depreciation runs afoul of WAC 284-30-330(7), Sparks has yet to conclusively establish what amount is actually owed under the policy and to what extent American Family undervalued his

claim. Accordingly, since WAC 284-30-330(7) prohibits the practice of offering "*substantially* less than the amount *ultimately* recovered," (emphasis added), the Court declines to find at this time that American Family's handling of Sparks's claim violated WAC 284-30-330(7) as a matter of law.

Finally, Sparks argues that American Family violated WAC 284-30-330(3), which prohibits insurers from "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies." Specifically, Sparks argues that American Family failed to implement the regulatory standard that "[i]nsurers are responsible for the accuracy of evaluations to determine actual cash value." WAC 284-30-380(7). Based on the Court's analysis above, it is clear that American Family failed to implement this regulatory standard to take responsibility in accurately determining Actual Cash Value. The Court has already found that American Family's depreciation adjustment was made in bad faith when it unreasonably undervalued the covered property's Actual Cash Value based on age without any regard to the property's actual physical condition or obsolescence.

The violation of each of these insurance regulations constitutes a "per se" unfair trade practice. Washington statutes further dictate that such practices impact the public interest, as they took place in the course of adjusting an insurance claim. RCW 48.01.030 ("The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."). Also, because American Family's conduct resulted in

an undervaluation of Sparks's claim, American family has caused injury to Sparks in his business or property.

Based on the foregoing, Sparks's motion for summary judgement is **GRANTED** to the extent that American Family violated the CPA by (1) rejecting his claim without adequately investigating the actual physical condition or obsolescence of the covered property, (2) representing that the policy defines depreciation as "age over expected lifespan," and (3) applying depreciation to the covered property based solely on its age without regard to actual physical deterioration or obsolescence. Further, the Court finds that American Family's violation of the CPA entitles Sparks to reasonable attorney fees as well as statutory treble damages not to exceed $25,000 pursuant to RCW 19.86.090. However, as the exact extent of damages remains to be determined, and will likely be a disputed question of fact, the Court declines to enter an award for a specific sum.

## C.    Rule 11 Motion

Sparks has also moved for sanctions pursuant to Rule 11. Rule 11(b) provides:

> (b) By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). If a party violates Rule 11(b), the opposing party may move for sanctions pursuant to Rule 11(c). Fed. R. Civ. P. 11(c)(2). "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." *Id.*

Sparks argues that sanctions against American Family are warranted on the basis that American Family's motion was frivolous in light of the Court's previous order in *Barron*. Sparks notes that American Family's counsel appears to have copied their previous brief from the summary judgment proceedings in *Barron* almost verbatim in their present motion. *Compare* Dkt. 7 *with Barron*, C16-5576 BHS, Dkt. 44. However, while *Barron* dealt with the question of whether age was ever an appropriate factor in assessing depreciation, that question is not present in this case. In this case, the relevant issue is whether American Family improperly devalued the property covered in Sparks's claim by assessing depreciation based on age without any investigation or basis to suggest that the age of the property had resulted in physical deterioration or obsolescence.

As Sparks has pointed out, American Family's motion appears to be "recycled" briefing from the proceedings in *Barron*. American Family's counsel has responded by arguing that it is not required to reinvent the wheel in each case. *See* Dkt. 21 at 3. Indeed, it might even be considered irresponsible if attorneys billed their clients for drafting a motion from scratch when previously successful portions of already drafted materials are directly relevant to a new project. Usually, such recycling might consist of copying over

relevant legal standards and rules. But American Family's motion presents a product that falls below the standard one might hope to see when attorneys recycle portions of older briefs.

Most glaringly, American Family's present motion seeks summary judgment on the basis that Sparks's claims are predicated solely on a faulty theory that was presented in *Barron*, even though that theory is not actually asserted in Sparks's complaint. Specifically, American Family's motion repeatedly represents that it "is entitled to summary judgment as a matter of law on *all of Plaintiffs' claims* because *they are all predicated on the legally incorrect premise* that American Family's insurance policies preclude the use of age in calculating depreciation." Dkt. 7 at 2 (emphasis added). *See also id.* at 1 ("Plaintiffs . . . argue that age must be categorically excluded in applying depreciation . . . ."); *id.* at 10 ("Their dispute *is limited to* whether age may be considered when determining the amount of depreciation.") (emphasis added); *id.* at 12 ("Presumptively, Plaintiffs will allege that this statement is an exclusive limitation on how depreciation is calculated, that only 'physical deterioration and obsolescence' may be considered, and that because the word 'age' is not included, age may not be considered in the calculation."); *id.* at 13 ("Plaintiff will contend that age may not be considered in calculating depreciation because the word does not appear in the policies."). However, Sparks's complaint plainly states that his claims are predicated on a theory that American Family "improperly used age for purposes of applying improperly high depreciation values to Plaintiff's personal property claims" by failing to "show that the passage of time caused physical deterioration or obsolesce of each item of personal

property *before* using age as a basis for depreciation . . . ." Dkt. 1-2 at 2 (emphasis

added). Therefore, it is clear that Sparks does not argue that age is always an

inappropriate factor in depreciation calculations; rather, he asserts that American Family

devalued his insurance claim with improperly high depreciation calculations by

automatically applying an across-the-board formula based solely on age without regard

for whether the passing of time actually resulted in physical deterioration or

obsolescence.

American Family's lazily copied brief even attributes a quoted argument to

Sparks's complaint which does not actually exist in the complaint. *See* Dkt. 7 at 8

(quoting "FAC ¶ 28"). While American Family's counsel has referred to this as merely a

"regretful clerical error," *see* Dkt. 21 at 3, the wholesale copying of the firm's previous

brief—which was denied to the extent it is relevant to the allegations in the present

complaint—has resulted in a poor product that presents more problems than a mere

clerical mistake. As explained above, it misrepresents the entire basis of Sparks's claims

in a manner that is clearly inconsistent with the allegations of the complaint.

American Family further explains that it believed that its motion was relevant in

light of communications from Sparks's counsel which suggested that this lawsuit is

predicated on a theory that age can never be used as a factor in depreciation calculations.

*See* Dkt. 21 at 2–4. The communication that most strongly supports this argument is an

email from the public adjuster of Sparks's insurance claim, transmitted in February 2017,

nearly a year before this case was filed. Dkt. 22-1 at 17. Additionally, in August of 2017,

Sparks's counsel sent an email to American Family's counsel asserting that "it is

improper for American Family to use age, rather than deterioration and obsolescence, to depreciate Mr. Sparks' personal property." Dkt. 14-1 at 1. But both of these communications were sent prior to the commencement of this lawsuit, and all of the remaining communications cited by American Family make clear that Sparks's complaint is predicated on the theory that American Family improperly relied upon age *alone* in assessing depreciation. Dkt. 22-1 at 10–12, 18–20.

Ultimately, the Court declines to issue sanctions. The Court's discussion above is alone sufficient to encourage better briefing practices in the future. There is sufficient evidence in communications from Sparks's counsel sent before the commencement of this lawsuit from which American Family's counsel could rationally infer that this case presented the question of whether age was a categorically impermissible consideration in calculating depreciation under the policy. This does not justify American Family's request to have the entire case dismissed based on its repeated assertion that this was the *only* issue presented in this case, particularly when the pleadings and numerous communications from Sparks's counsel stated otherwise. But the Court has already determined that Sparks will be entitled to reasonable attorney fees in light of his successful CPA claim. Adding sanctions on top of such an award is unnecessary. It is penance enough that the motion remains on a publicly accessible docket.

## III.  ORDER

Therefore, it is hereby **ORDERED** that American Family's motion for summary judgment (Dkt. 7) is **DENIED**, Sparks's motion for sanctions (Dkt. 17) is **DENIED**, and

Sparks's motion for summary judgment is **GRANTED in part and DENIED in part** as set forth above.

Dated this 10th day of May, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge